UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY B. BLOMSTROM,

    Plaintiff,                                   Hon. John Corbett O'Meara

v.

                                             Case No. 08-10016

NIELSEN MEDIA RESEARCH, INC.,
a foreign corporation,

    Defendant.
_____/

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant's motion for summary judgment, filed September 29, 2008. Plaintiff filed a response on October 14, 2008; Defendant submitted a reply brief on October 27, 2008. The court heard oral argument on December 18, 2008, and took the matter under advisement. For the reasons set forth in this opinion, Defendant's motion is denied in part and granted in part.

**BACKGROUND FACTS**

Plaintiff Nancy Blomstrom brought this suit against her current employer, Nielsen Media Research, Inc., alleging sex discrimination and retaliation pursuant to the Elliott-Larsen Civil Rights Act. Blomstrom began her employment with Nielsen as a Membership Representative in September 2004. Her job was to recruit households to participate in the Nielsen television ratings. Plaintiff was successful in her position and was promoted to Membership Representative/Trainer for the Detroit area in April or May 2005. She continued to recruit

households to participate in television ratings, but also had the responsibility of training and counseling other membership representatives.

In August 2005, Blomstrom learned that her direct supervisor, Yvette Vargas, was leaving her position. Vargas told Blomstrom that she was the best membership representative in the Detroit office and that Vargas was recommending her for the open Membership Representative Supervisor position to Joe Elgin and Nicole Thrower. Nicole Thrower had recently become the Membership Representative Manager; Joe Elgin was Regional Manager for the region that included Detroit. Both Thrower and Elgin were involved in interviewing for the open position. Thrower Dep. at 54.

Thrower and Elgin interviewed Blomstrom for the position, as well as other candidates, including Albert Collins, another Membership Representative. Thrower acknowledged that, based upon performance reviews, Blomstrom was the highest ranked candidate. Thrower Dep. at 65. According to Defendant, however, Collins interviewed better than Blomstrom, and Collins received the promotion.

In early 2006, Blomstrom applied for an Interim Membership Supervisor position in Atlanta. She was interviewed by Nancy Bacon and Steve Agans. She was offered the position effective March 2006. Nielsen expected the position to last two or three months. Subsequently, however, the full-time Membership Supervisor position opened up in Atlanta. Blomstrom was interviewed by her supervisor, Nancy Bacon, and received the job. At the time, Blomstrom was living in Atlanta, but her husband and children remained in Michigan. She planned to move her family to Atlanta, but economic conditions in Michigan required a change in plans.

Blomstrom and Nielsen agreed that she would give up her supervisor position in Atlanta

and return to Detroit.  At the time, Nicole Thrower had replaced Nancy Bacon as Blomstrom's supervisor in Atlanta.  Thrower's performance review of Blomstrom indicated that Blomstrom met company expectations in her role as Membership Supervisor in Atlanta.

Upon her return to Detroit, Blomstrom resumed her position as Membership Representative/Trainer.  She was named Membership Representative of the Month in February 2007.

In April 2007, Albert Collins announced he was taking another position within the company.  When Blomstrom learned the Membership Supervisor position in Detroit was going to be open, she met with Regional Manger Joe Elgin to promote herself.  In that meeting, Elgin told Blomstrom that he was part of the decision to promote Collins instead of her. Blomstrom Dep. at 101-102.  Blomstrom testified: "he said that's why he wanted Albert in the supervisor position the first time, because he was a man, that he preferred men in supervisor roles. . . ." Id. Elgin also allegedly said that Collins "male and could be called upon at any time and he knew it would be done because he didn't have other responsibilities. . . ." Id. at 131.  Blomstrom testified that she was "flabbergasted" by Elgin's remarks. Id.

Nonetheless, Blomstrom applied for the supervisor position.  A few weeks before her interview, Blomstrom reported Elgin's remarks to Nicole Thrower.  Blomstrom told Thrower that she thought the remarks were sexist.  Thrower believed that there must have been a "misunderstanding" and did not report Elgin's remarks further up the management chain, as required by company policy.  Thrower Dep. at 182-84.

Thrower and Elgin interviewed Blomstrom for the open supervisor position in May 2007. Blomstrom testified that she again complained about Elgin's comment that he preferred male

candidates for the supervisor position and that she thought it was sexist.  Blomstrom Dep. at 181.  Blomstrom stated that she got no verbal response from Elgin and Thrower; she testified that Thrower's "jaw dropped a little bit as well, and then it was kind of the subject was mostly avoided, and I was shocked." Id. at 181-82.

Blomstrom was not promoted to the open supervisor position.  Instead, John Clark got the job.  Thrower acknowledged that, with respect to the numbers upon which membership representatives are evaluated, Blomstrom was ranked higher than Clark.  Thrower testified that she made the decision to promote Clark based upon his twenty-five years of supervisory experience prior to his employment with Nielsen.  Elgin's first choice for the position was another candidate, Ed Chesney, who had worked for Nielsen for twenty-five years.

After learning that she did not get the promotion, Blomstrom took a medical leave as a result of stress.  Her leave was initially granted from June 14-28, 2007; however, Blomstrom did not return to work at that time.  She did not provide documentation to Nielsen extending her leave; Blomstrom apparently thought she had been approved for leave under the FMLA through September 5, 2007.  Blomstrom applied for short-term disability, but the claim was denied.  Thereafter, Nielsen terminated Blomstrom's employment when she did not return to work.

On August 29, 2007, Blomstrom sent Thrower a letter, reiterating her complaint of employment discrimination and retaliation, stating that her doctor released her to return to work on September 4, 2007, and referring Thrower to her attorney.  Nielsen reinstated Blomstrom, who continues to work for the company.

**LAW AND ANALYSIS**

I.     **Standard of Review**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

II.    **Discrimination Claim**

Defendant seeks summary judgment on Plaintiff's claims of sex discrimination and retaliation. Defendant contends that Plaintiff has not shown direct evidence of discrimination and cannot meet the *McDonnell-Douglas* burden-shifting test. Defendant attempts to downplay Elgin's comment that he prefers men by contending that Thrower, not Elgin, had decision-making authority. Nielsen asserts that Elgin's comment was an isolated, "stray" remark. However, Elgin's comment cannot be so easily disregarded.

Where a plaintiff presents direct evidence of discriminatory intent in connection with an adverse employment action, "the burden of both production and persuasion shifts to the employer to prove" that it would have taken the same action "even if it had not been motivated by impermissible discrimination." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). See also Harrison v. Olde Financial Corp., 225 Mich. App. 601, 612-13, 572 N.W.2d 679

(1998). Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions" and does not require a factfinder to draw any inferences that the adverse employment action was motivated by discrimination. Johnson v. The Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003) (citations omitted).

In this case, Elgin's comment is direct evidence of discrimination. Viewing it in the light most favorable to Plaintiff, Elgin told Plaintiff that she did not get promoted in 2005 because he preferred male candidates. Although Nielsen contends that Elgin was not the ultimate decision-maker, it is undisputed that he was involved: he interviewed candidates alongside Thrower and provided his input. Under these facts, the "stray remark" doctrine does not apply. See Harrison, 225 Mich. App. at 609 n.7 (holding racial slurs made by employees who had input in decision to be direct evidence of discrimination); Wells v. The New Cherokee Corp., 57 F.3d 233, 237-38 (6th Cir. 1995) ("[C]ourts must consider as probative evidence any statements made by those individuals who are in fact meaningfully involved in the decision. . . ."). As a result, there is a question of material fact regarding whether the decisions not to promote Plaintiff were influenced by Elgin's alleged animus.

Where a plaintiff has presented direct evidence of discrimination, "an employer may not avoid trial by merely 'articulating' a nondiscriminatory reason for its action. Under such circumstances, the case ordinarily must be submitted to the factfinder for a determination whether the plaintiff's claims are true." Harrison, 225 Mich. App. at 613. Accordingly, the court will deny Defendant's motion for summary judgment on Plaintiff's sex discrimination claim.

**III.    Retaliation Claims**

After complaining about discrimination to Thrower, Plaintiff claims that she was

retaliated against because (1) she was passed over for the promotion in 2007, which was given to John Clark; (2) she was terminated while on medical leave; and (3) she was subjected to "retaliatory harassment" upon her return to work.  To establish a prima facie case of retaliation, Plaintiff must show that (1) she engaged in protected activity; (2) Nielsen knew about it; (3) Nielsen took an employment action adverse to Plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Meyer v. City of Center Line, 242 Mich. App. 560, 568-69, 619 N.W.2d 182 (2000).

There is a question of fact regarding whether Plaintiff was not promoted in 2007 in retaliation for raising a complaint of sex discrimination.  Plaintiff complained to Thrower about Elgin's comment, but Thrower ignored her complaint and did not report it up the management chain.  Plaintiff raised the issue again in her interview with Elgin and Thrower, and again the issue was ignored.  In her affidavit, Plaintiff stated that Thrower got a "disgusted" look on her face when Plaintiff raised the issue at the interview.  Under these facts, summary judgment is not appropriate with respect to her failure to promote claim.

With respect to Plaintiff's termination, Defendant argues that the human resources department made the decision and that no one in human resources was aware of Plaintiff's discrimination complaint.  Plaintiff, however, points to a string of emails in which she claims that Thrower urged Plaintiff's termination.  Although the emails are not that clear –  (Thrower asks human resources, "how long can this [her leave] go on unapproved?") – they are sufficient to allow the question of Thrower's involvement in Plaintiff's termination to go to the jury.

Plaintiff's remaining claims of retaliation are that Thrower instructed Collins to lower Plaintiff's performance evaluation, Nielsen took away her vacation days, and that John Clark

gave better assignments to his male friends.  Plaintiff suggests that this is a pattern of retaliatory harassment.  See Morris v. Oldham Cty. Fiscal Ct., 201 F.3d 784, 792-93 (6th Cir. 2000); Meyer, 242 Mich. App. at 569-72.  These allegations do not, however, rise to the level of "severe or pervasive" harassment required to state a claim.  See Morris, 201 F.3d at 792-93.  Further, Plaintiff has not demonstrated a causal connection between her protected activity and these alleged acts of retaliation.  For example, there is no evidence that John Clark knew of her protected activity.  Accordingly, to the extent Plaintiff attempts to craft these allegations into a separate claim of retaliatory harassment, the court grants summary judgment in favor of Defendant.

## ORDER

IT IS HEREBY ORDERED that Defendant's September 29, 2008 motion for summary judgment is DENIED IN PART and GRANTED IN PART, consistent with this opinion.


                                              s/John Corbett O'Meara
                                              United States District Judge

Date:  January 14, 2009


I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, January 14, 2009, by electronic and/or ordinary mail.

                                              s/William Barkholz
                                              Case Manager